Filed 7/16/19; Modified and certified for publication 8/13/19 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| A.J. FISTES CORPORATION, | B283662 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BS161779) |
| v. | |
| GDL BEST CONTRACTORS, INC., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Teresa A. Beaudet, Judge.  Reversed and remanded.

Carlin Law Group and Kevin R. Carlin for Plaintiff and Appellant.

Lanak & Hanna, Francis J. Lanak and Mac W. Cabal for Defendants and Respondents.

———————————————

Plaintiff A.J. Fistes Corporation (Fistes) appeals from a judgment entered after the trial court sustained without leave to amend the demurrer filed by defendants GDL Best Contractors, Inc. (GDL) and its officers, Francisco M. Lopez, Jose C. Lopez, and Benjamin Lopez (collectively, the Lopezes), to Fistes's third amended complaint. Fistes brought suit against GDL, the Lopezes, and the Montebello Unified School District (the District), seeking a declaration the contract the District awarded to GDL for the remediation of school properties was void due to violations of the Public Contract Code and the Government Code. Fistes alleged it was the low bidder on the contract. Fistes also sought a constructive trust against GDL in favor of the District. In sustaining the demurrer, the trial court found Fistes lacked standing to sue GDL and the Lopezes, and Fistes's third amended complaint was fatally uncertain. Fistes later voluntarily dismissed the District without prejudice. On appeal, Fistes contends it has standing as a state taxpayer because the District is an agency of the state and state money wholly funded the remediation project.

While Fistes's appeal was pending, the Legislature amended Code of Civil Procedure section 526a,[1] effective January 1, 2019, to specify what types of tax payments are sufficient to establish taxpayer standing. We invited the parties to submit supplemental briefing addressing the effect of the amendment. In its letter brief, Fistes contends the amendment to section 526a applies to this case because the change in law does not alter the legal consequences of defendants' past

---

[1] All further undesignated statutory references are to the Code of Civil Procedure.

conduct.[2]  We agree and conclude Fistes alleged facts sufficient to establish standing under section 526a based on its payment of state taxes that fund the District.

The trial court also erred in sustaining the demurrer based on uncertainty without leave to amend.  Although Fistes has not adequately alleged a cause of action against the Lopezes, it has made a sufficient showing for leave to amend.

We reverse and remand for further proceedings.  On remand, the trial court should grant Fistes leave to amend its complaint.

---

[2]     GDL and the Lopezes argue in their supplemental brief the amendment to section 526a did not confer standing on Fistes because Fistes's payment of taxes to the state was insufficient for standing under the amendment, and Fistes's standing argument should be rejected because Fistes opposed the demurrer based only on its standing as a disappointed bidder, not a taxpayer. These contentions are not persuasive.  As to the second contention, we decline to find forfeiture because it was GDL and the Lopezes who raised Fistes's standing as a state taxpayer in their demurrer, and the trial court addressed in its ruling whether Fistes had taxpayer standing under former section 526a. (*People v. McCullough* (2013) 56 Cal.4th 589, 593 ["'"The purpose of [the forfeiture] rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected."'"]; *Boyle v. CertainTeed Corp.* (2006) 137 Cal.App.4th 645, 649 ["The critical point for preservation of claims on appeal is that the asserted error must have been brought to the attention of the trial court."].)

## FACTUAL AND PROCEDURAL BACKGROUND

A.     *The Fistes and GDL Bids and the District's Contract Award*

In February 2016 the District issued specifications for a project entitled, "Exterior Environmental Remediation and Painting at Various Sites" (the project).[3]  The project involved painting, improvements, and the removal of hazardous materials at several elementary school sites in the District.  The specifications indicated the work was to be performed over "[a] total of 30 consecutive calendar days."  (Boldface omitted.)

The District opened bidding on the project on March 1, 2016.  Fistes submitted a bid to complete the work for $1,127,900; GDL submitted a bid for $2,555,000.  On March 7 the District informed Fistes its bid was deemed nonresponsive because the company had failed to include required financial statements, and the bid was missing a corporate seal.  Fistes sent the District a letter on March 9 protesting the rejection of its bid.  On April 7, 2016 the District awarded the contract to GDL.

B.     *Department 85 Proceedings*

On April 19, 2016 Fistes filed a petition for a writ of mandate against the District, naming GDL as a real party in interest.  On April 27 Fistes filed an ex parte application for issuance of an alternative writ of mandate and a temporary restraining order.  The District and GDL opposed the application.  GDL argued it had "begun substantial performance and [was] nearing completion of its performance on the Project."  (Italics omitted.)  On April 27, after hearing argument from counsel, the

_____

[3]     The factual summary is taken from the third amended complaint and the attached exhibits.

4

trial court denied the application, but set a hearing on the petition for November 15, 2016.[4]

On August 8, 2016 Fistes filed a verified first amended petition for writ of mandate and complaint for declaratory, injunctive, and other equitable relief. Fistes named the District as a defendant and respondent and GDL as a defendant and real party in interest. Fistes alleged the District's governing board illegally awarded GDL the project contract, which Fistes sought to declare void. Fistes alleged the District violated multiple provisions of the Public Contract Code and Government Code, including accepting GDL's bid proposal despite its failure to prequalify for the contract (Pub. Contract Code, § 20111.5, subd. (d)) and contracting with GDL despite a conflict of interest (Gov. Code, § 1090). Fistes sought a judgment declaring the award of the contract to GDL void or invalid, a constructive trust in favor of the District and taxpayers, injunctive relief, and a peremptory writ of mandate directing the District to rescind all illegal payments to GDL and to deliver to Fistes a number of requested documents.

On September 28, 2016 Fistes filed an ex parte application seeking continuation of the trial, a briefing schedule on two discovery motions, and leave to amend to add a reference to Public Contract Code section 20111.6, which requires prospective bidders on specified public projects to submit prequalification questionnaires and financial statements. GDL opposed the application, arguing Fistes's petition for a writ of mandate was "moot as the Project has now been completed," and Fistes lacked standing to bring its claims. After a hearing, on September 28,

_____

[4] Judge James C. Chalfant presided over the Department 85 proceedings.

5

2016 the trial denied Fistes's ex parte application, dismissed the writ of mandate cause of action as moot, and granted Fistes leave to amend.[5]  The trial court transferred the case from the writs and receivers department (Department 85) to Department 50.

C.      *Department 50 Proceedings*
        1.      *Fistes's third amended complaint*
        On October 18, 2016 Fistes filed a second amended complaint.  Following the filing of a demurrer by GDL, but before a hearing, Fistes filed the operative third amended complaint.  Fistes named the District, GDL, and the Lopezes as defendants.

        The third amended complaint alleged "[a]t all times relevant hereto [Fistes] has paid taxes to the State of California that were used directly and/or indirectly to make the payments that are the subject of this action and is interested in assuring [the District] does not pay money out under contracts that are awarded in violation of California law."  Further, the project "was funded by the State of California via the Leroy F. Greene School Facilities Act of 1998 . . . and/or funds from state school bonds."  Fistes also alleged the District "paid GDL $2,416,470.62 from the California State School Facility Program" for its work on the project.

        Fistes alleged the District violated Public Contract Code sections 20111.5 and 20111.6 by failing to require bidders to prequalify for the contract.  Fistes also alleged conflicts of interest between the District and GDL, in violation of Government Code section 1090.  Specifically, the District and

---

[5]      On our own motion, we augment the record to include the trial court's September 28, 2016 minute order.  (Cal. Rules of Court, rule 8.155(a)(1)(A).)

6

GDL had agreed GDL would perform other contracts for less compensation in return for the District awarding the project to GDL. In addition, the District's "officers, employees and/or consultants (including GDL)" had financial and nonfinancial interests in the contract.

Fistes alleged Francisco M. Lopez, Benjamin Lopez, and Jose C. Lopez were, respectively, the president, vice president, and secretary-treasurer of GDL. Fistes alleged as to the Lopezes: "GDL was used by [the Lopezes] to perpetrate fraud (i.e. obtain payment from [the District] on an illegal contract), circumvent a statute (i.e. not comply with the Public Contract Code statutes applicable to school district bidder pre-qualification and contract awards) and/or accomplish some other wrongful or inequitable purpose (i.e. obtain payment from [the District] on an illegal contract), such that justice and equity require the Court to disregard the corporate entity separateness of GDL from [the Lopezes] and treat GDL's acts and liabilities as if they were those of [the Lopezes] since they were the ones actually controlling GDL as its only officers, directors and shareholders and they benefitted most from [the District]'s illegal payments to GDL. For purposes of this action [the Lopezes] are the alter egos of GDL such that their liability should be joint and several with GDL . . . ." Further, GDL "pass[ed] significant portions of [the] $2,416,470.62 to [the Lopezes] in the form of increased salary, bonuses, distributions, shareholder advances and other forms of compensation, value and/or other benefits that they would not have received but for the monies GDL received from [the District] on the Project."

Fistes sought a judgment declaring the contract between the District and GDL "void, invalid and/or that amounts paid

7

thereunder must be reduced and returned to [the District] as provided in Public Contract Code §5110." Fistes also sought to establish a constructive trust in favor of the District against GDL and the Lopezes and a judgment ordering GDL and the Lopezes "to repay to [the District] (or Plaintiff on behalf of and for the benefit of [the District]) all excess/illegal payments received" for performance of the contract.

2.     *Defendants' demurrer*

GDL and the Lopezes demurred to the third amended complaint. They argued Fistes lacked taxpayer standing under former section 526a[6] because it alleged only that it had paid taxes to the state, not taxes within the District. Defendants also argued the third amended complaint was uncertain because it failed separately to state the causes of action, despite referencing multiple legal theories, including fraud, unjust enrichment, constructive trust, and "alter ego," and it did not identify which defendants Fistes was seeking to hold liable under which theories. Defendants contended the third amended complaint failed to state a cause of action against the Lopezes, failed to allege facts sufficient to support alter ego liability, and failed to

---

[6]     Former section 526a provided, "An action to obtain a judgment, restraining and preventing any illegal expenditure of, waste of, or injury to, the estate, funds, or other property of a county, town, city or city and county of the state, may be maintained against any officer thereof, or any agent, or other person, acting in its behalf, either by a citizen resident therein, or by a corporation, who is assessed for and is liable to pay, or, within one year before the commencement of the action, has paid, a tax therein." As discussed below, in 2018 the Legislature amended section 526a, effective January 1, 2019.

8

plead facts constituting a cause of action for fraud with adequate specificity.

Fistes opposed the demurer, arguing it had standing as a "disappointed bidder" acting in the public interest. Fistes contended its third amended complaint was not uncertain, but requested leave to amend if the trial court concluded otherwise. Fistes also requested leave to amend to reassert its cause of action for a writ of mandate, arguing the court should find its claim was not moot because public contracts would always be completed before a legal challenge could be adjudicated. Fistes sought leave to plead additional facts to address mootness and to support recovery of its bid preparation costs from the District.

Fistes also argued it had sufficiently alleged alter ego liability against the Lopezes and a cause of action for restitution. In the alternative, Fistes requested leave to amend, arguing it could allege liability of the Lopezes based on their unjust enrichment from the contract, pointing to an independent audit of the contract relating to alleged financial improprieties. Fistes filed an attorney declaration in support of this request, attaching several news articles regarding the Legislature's initiation of an audit of the District and the District's firing of its superintendent, chief financial officer, and chief business officer, as well as letters from a third party to the District regarding an audit of the District the company was hired to perform.

In their reply, GDL and the Lopezes argued Fistes had no standing to bring an action against GDL for return of the funds the District paid under the contract, noting Fistes sued as a taxpayer, not a disappointed bidder. Further, any remedy Fistes had against the District was limited to an action for a writ of

9

mandate to compel the District to perform its ministerial duties, not a claim against GDL and the Lopezes as private parties.

After a hearing, on April 28, 2017 the trial court sustained the demurrer without leave to amend. The trial court found Fistes lacked standing as a taxpayer under former section 526a because Fistes "does not allege that it is a taxpayer in the District of Montebello but rather a taxpayer in the state." Further, Fistes did not have standing as a disappointed bidder to bring an action against GDL and the Lopezes. The trial court also sustained the demurrer based on uncertainty, finding the third amended complaint "does not adequately apprise [GDL and the Lopezes] of the causes of actions they must defend." The court found the third amended complaint violated California Rules of Court, rule 2.112,[7] "because it does not separately state each cause of action and does not specifically state against whom the cause of action is directed. Rather, the entirety of the [third amended complaint] is based on allegations of improper conduct by [the District]." The court also denied Fistes's request for leave to amend to plead standing on a claim for bid preparation costs, stating "there is no basis for a claim for bid preparation costs against [GDL and the Lopezes]."[8]

---

[7] California Rules of Court, rule 2.112 provides, "Each separately stated cause of action, count, or defense must specifically state: [¶] (1) Its number (e.g., 'first cause of action'); [¶] (2) Its nature (e.g., 'for fraud'); [¶] (3) The party asserting it if more than one party is represented on the pleading (e.g., 'by plaintiff Jones'); and [¶] (4) The party or parties to whom it is directed (e.g., 'against defendant Smith')."

[8] The trial court did not address Fistes's request for leave to amend to reassert its cause of action for a writ of mandate against the District.

10

The trial court entered judgment on June 1, 2017.  Fistes timely appealed.  On August 4, 2017 Fistes voluntarily dismissed the District without prejudice.

## DISCUSSION

A.    *Standard of Review*

"In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory. [Citation.]  Where the demurrer was sustained without leave to amend, we consider whether the plaintiff could cure the defect by an amendment." (*T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162; accord, *Centinela Freeman Emergency Medical Associates v. Health Net of California, Inc.* (2016) 1 Cal.5th 994, 1010.)  When evaluating the complaint, "we assume the truth of the allegations."  (*Lee v. Hanley* (2015) 61 Cal.4th 1225, 1230; accord, *McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415.)

A trial court abuses its discretion by sustaining a demurrer without leave to amend where "'there is a reasonable possibility that the defect can be cured by amendment.'" (*Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1100; accord, *City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.)  "'The plaintiff has the burden of proving that [an] amendment would cure the legal defect, and may [even] meet this burden [for the first time] on appeal.'" (*Sierra Palms Homeowners Assn. v. Metro Gold Line Foothill Extension Construction Authority* (2018) 19 Cal.App.5th 1127, 1132; accord, *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 971.)

11

"'Both standing and the interpretation of statutes are questions of law to which we typically apply a de novo standard of review.'" (*California DUI Lawyers Assn. v. Department of Motor Vehicles* (2018) 20 Cal.App.5th 1247, 1258 (*DUI Lawyers*); accord, *San Luis Rey Racing, Inc. v. California Horse Racing Bd.* (2017) 15 Cal.App.5th 67, 73.) Because the facts relevant to taxpayer standing are not in dispute, we review de novo whether Fistes has standing to sue. We consider "the statute's language and structure, bearing in mind that our fundamental task in statutory interpretation is to ascertain and effectuate the law's intended purpose." (*Weatherford v. City of San Rafael* (2017) 2 Cal.5th 1241, 1246 (*Weatherford*); accord, *City of San Jose v. Superior Court* (2017) 2 Cal.5th 608, 616.)

B.      *The Third Amended Complaint Alleges Facts Sufficient To Establish Taxpayer Standing Under Section 526a*

1.      *Taxpayer standing under section 526a*

"At its core, standing concerns a specific party's interest in the outcome of a lawsuit. [Citations.] We . . . require a party to show that he or she is sufficiently interested as a prerequisite to deciding, on the merits, whether a party's challenge to legislative or executive action independently has merit." (*Weatherford, supra*, 2 Cal.5th at p. 1247; accord, *People ex rel. Becerra v. Superior Court* (2018) 29 Cal.App.5th 486, 495 ["'Standing is a threshold issue necessary to maintain a cause of action, and the burden to allege and establish standing lies with the plaintiff.'"].) Under section 367, "'[o]nly a real party in interest has standing to prosecute an action, except as otherwise provided by statute.'" (*Summers v. Colette* (2019) 34 Cal.App.5th 361, 367; accord, *Turner v. Seterus, Inc.* (2018) 27 Cal.App.5th 516, 525.)

"Section 526a provides a mechanism for controlling illegal, injurious, or wasteful actions by [government] officials," which "remains available even where the injury is insufficient to satisfy general standing requirements under section 367." (*Weatherford, supra*, 2 Cal.5th at p. 1249; accord, *DUI Lawyers, supra*, 20 Cal.App.5th at p. 1258 ["'However strict the concept of standing may be in other contexts, it has been considerably relaxed by section 526a . . . ."'].)  For a taxpayer to establish standing under section 526a, "'no showing of special damage to the particular taxpayer has been held necessary.'" (*Holloway v. Showcase Realty Agents, Inc.* (2018) 22 Cal.App.5th 758, 770; accord, *Chiatello v. City and County of San Francisco* (2010) 189 Cal.App.4th 472, 481.)  "'The primary purpose of [section 526a] . . . is to "enable a large body of the citizenry to challenge governmental action which would otherwise go unchallenged in the courts because of the standing requirement." [Citation.]  [¶] California courts have consistently construed section 526a liberally to achieve this remedial purpose.'" (*California Taxpayers Action Network v. Taber Construction, Inc.* (2017) 12 Cal.App.5th 115, 141; accord, *White v. Davis* (1975) 13 Cal.3d 757, 763 [interpreting former § 526a in light of its purpose to provide "a general citizen remedy for controlling illegal governmental activity"].)

The courts have upheld taxpayer standing under section 526a in suits against school districts to obtain a judgment restraining or preventing the waste of public funds.  (See *Los Altos Property Owners Assn. v. Hutcheon* (1977) 69 Cal.App.3d 22, 24, fn. 1, 30 [property owners' association and school district residents had standing to sue school district to enjoin junior high school consolidation plan]; accord, *Taxpayers for Accountable*

13

*School Bond Spending v. San Diego Unified School Dist.* (2013) 215 Cal.App.4th 1013, 1032 [taxpayer association had standing to sue school district where individual members of association were residents of district and taxpayers].)

Further, taxpayers have standing under section 526a to sue "to set aside void or illegal contracts," including by bringing suit against a private entity to disgorge public funds paid by a local entity on an allegedly illegal public contract. (*Holloway v. Showcase Realty Agents, Inc., supra*, 22 Cal.App.5th at pp. 770-771 [taxpayer had standing under former § 526a to sue water district, seller of property, realty agency, and broker to declare contract for sale of property to water district void and to disgorge funds from seller and broker]; *California Taxpayers Action Network v. Taber Construction, Inc., supra*, 12 Cal.App.5th at p. 145, fn. 25 [taxpayer organization had standing under former § 526a to bring claim against construction contractor and school district to void lease-leaseback agreement based on conflict of interest]; see *Miller v. McKinnon* (1942) 20 Cal.2d 83, 96 [county taxpayer had standing to sue county officers and private partnership to recover money paid by county to partnership for repairs to county quarry based on noncompliance with competitive bidding statute].) As the Supreme Court explained in *Miller v. McKinnon*, at page 96, "[A] cause of action exists to recover from the person receiving [public] money illegally paid, independent of any statute, and it is also clear that the action may be prosecuted by a taxpayer in his name on behalf of the public agency."

The Supreme Court in *Weatherford* considered what tax payments are sufficient to grant taxpayer standing under former section 526a. (*Weatherford, supra*, 2 Cal.5th at p. 1246.) The

14

*Weatherford* court reversed the decision of the Court of Appeal, which had concluded former section 526a required payment of a local property tax to sue the local entity, but declined to "delineate the precise outer limits of the statute's operation." (*Weatherford*, at pp. 1250-1253.) In her concurrence, Chief Justice Cantil-Sakauye "urge[d] the Legislature to revisit section 526a and amend the statute in a manner that makes clear what kinds of taxes are sufficient to establish standing to sue a particular government entity for alleged wasteful or illegal expenditures." (*Id.* at p. 1253 (conc. opn.).) In 2018 the Legislature amended section 526a, effective January 1, 2019, responding to the Chief Justice's call for clarification.[9] (See Stats. 2018, ch. 319, § 1 (Assem. Bill No. 2376).)

2.  *Section 526a, as amended, applies to this action*

The 2018 amendment to section 526a clarifies the scope of tax payments that qualify to confer taxpayer standing. Section

---

[9]  In its analysis of Assembly Bill No. 2376, the Assembly's Concurrence in Senate Amendments explained the amendment to section 526a was in direct response to Chief Justice Cantil-Sakauye's concurrence in *Weatherford*, "to make clear that sales and use taxes, income taxes, business license taxes, and property taxes, among others, are sufficient to establish standing under the statute." (Assem. Conc. in Sen. Amend., com. on Assem. Bill No. 2376 (2017-2018 Reg. Sess.) Aug. 23, 2018, p. 2; see Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 2376 (2017-2018 Reg. Sess.) as amended July 5, 2018, pp. 2-3 [The amendment "clarifies the standing requirements" under section 526a in response to *Weatherford* to address "[t]he ambiguity of current law [that] prevents the public from establishing taxpayer standing under Section 526a as the Legislature intended."].)

526a, subdivision (a), now provides, "An action to obtain a judgment, restraining and preventing any illegal expenditure of, waste of, or injury to, the estate, funds, or other property of a local agency, may be maintained against any officer thereof, or any agent, or other person, acting in its behalf, either by a resident therein, or by a corporation, who is assessed for and is liable to pay, or, within one year before the commencement of the action, has paid, *a tax that funds the defendant local agency*, including, but not limited to, the following:  [¶]  (1) An income tax.  [¶]  (2) A sales and use tax or transaction and use tax initially paid by a consumer to a retailer.  [¶]  (3) A property tax, including a property tax paid by a tenant or lessee to a landlord or lessor pursuant to the terms of a written lease.  [¶]  (4) A business license tax."  (Italics added.)

In its supplemental letter brief, Fistes argued the amendment to section 526a applies to this case because it would not alter defendants' liability for past conduct and would not deprive defendants of any substantive defense.[10]  We agree the amendment is properly applied prospectively to confer standing on Fistes.

There is a "presumption that statutes operate prospectively absent a clear indication the voters or the Legislature intended otherwise."  (*Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 230 (*Mervyn's*); accord, *In re W.R.* (2018) 22 Cal.App.5th 284, 292 ["Statutes are presumed to operate prospectively absent a clear indication the voters or the Legislature intended otherwise."].)  However, "'[i]n deciding

---

[10]    GDL and the Lopezes do not address in their supplemental brief whether the amendment to section 526a applies prospectively to this case.

16

whether the application of a law is prospective or retroactive, we look to function, not form. [Citations.] We consider the effect of a law on a party's rights and liabilities, not whether a procedural or substantive label best applies.'" (*Mervyn's*, at pp. 230-231, quoting *Elsner v. Uveges* (2004) 34 Cal.4th 915, 936-937.) If the law "'"chang[ed] the legal consequences of past conduct by imposing new or different liabilities based upon such conduct,"'" or if it "'"substantially affect[s] existing rights and obligations,"'" then the law's application to a pending case is impermissible, absent the express intent of the Legislature to allow retroactive application. (*Mervyn's*, at p. 231; accord, *Elsner*, at p. 937.) If the law does not alter the legal consequences of past conduct, then application of the new law to a pending case is considered prospective. (*Mervyn's*, at p. 231 ["'"It is a misnomer to designate [such statutes] as having retrospective effect,"'" because "'"[t]he effect of such statutes is actually prospective in nature since they relate to the procedure to be followed in the future."'"].)

The courts have applied changes in law to pending cases both to limit and to expand the plaintiff's standing. (See *Mervyn's, supra*, 39 Cal.4th at p. 231 [change in law limited standing]; *Amaral v. Cintas Corp. No. 2* (2008) 163 Cal.App.4th 1157, 1199 (*Amaral*) [change in law expanded standing].) In *Mervyn's*, the Supreme Court considered the effect on pending litigation of the passage of Proposition 64 (as amended by voters, Gen. Elec. (Nov. 2, 2004)), which limited standing to sue under California's unfair competition and false advertising laws to plaintiffs who "'ha[ve] suffered injury in fact and ha[ve] lost money or property as a result of such unfair competition.'" (*Mervyn's*, at p. 227.) The plaintiff had appealed from the trial court's judgment for defendant on plaintiff's unfair competition

17

claims. (*Ibid.*) While plaintiff's appeal was pending, Proposition 64 took effect. (*Mervyn's*, at p. 227.) The Court of Appeal denied the defendant's motion to dismiss the appeal for lack of standing, declining to apply Proposition 64 to a pending case. (*Mervyn's*, at p. 228.) The Supreme Court reversed, concluding Proposition 64's limitation on standing applied to the pending case. (*Mervyn's*, at pp. 232, 234.) The court reasoned, "To apply Proposition 64's standing provisions to the case before us is not to apply them 'retroactively,' as we have defined that term, because the measure does not change the legal consequences of past conduct by imposing new or different liabilities based on such conduct." (*Id.* at p. 232.)

The court in *Amaral* confronted the effect of a change in law that expanded a plaintiff's standing to sue. (*Amaral, supra*, 163 Cal.App.4th at p. 1199.) There, plaintiffs had filed suit alleging violations of the Labor Code before the passage of the Private Attorneys General Act of 2004 (PAGA; Lab. Code, § 2698 et seq.), which permitted aggrieved employees to recover Labor Code penalties previously recoverable only by the Labor Commissioner. (*Amaral*, at p. 1195.) After the enactment of PAGA, plaintiffs amended their complaint in the trial court to seek additional penalties under the new law. (*Amaral*, at p. 1195.) On appeal, the defendant argued application of PAGA to allow plaintiffs to assert claims under the new law would be impermissibly retroactive. (*Amaral*, at pp. 1196-1197.) Relying on *Mervyn's*, the Court of Appeal concluded PAGA's expansion of standing was prospective in nature and properly applied to the pending case. (*Amaral*, at p. 1199.) The court explained, "Our case is the procedural opposite of *Mervyn's,* because PAGA granted private parties standing whereas Proposition 64 took

18

their standing away absent a showing of injury.  But the high court's analysis of retroactivity is directly on point.  Like Proposition 64, PAGA did not impose new or different liabilities on defendants based on their past conduct.  [Citation.]  It merely changed the procedural rules governing *who* has authority to sue for certain penalties." (*Ibid*.)

The reasoning of *Mervyn's* and *Amaral* applies squarely to the Legislature's amendment of section 526a.  The amendment specifies which tax payments are sufficient to establish taxpayer standing, but "does not change the legal consequences of [defendants'] past conduct by imposing new or different liabilities based on such conduct." (*Mervyn's, supra*, 39 Cal.4th at p. 232; accord, *Amaral, supra*, 163 Cal.App.4th at p. 1197.)  Defendants do not dispute the claims asserted by Fistes would be actionable if brought by an individual taxpayer who was a resident of the District, and defendants' liability remains the same regardless of who brings the action.

The fact the Legislature amended section 526a while the appeal was pending does not alter our analysis.  As discussed, in *Mervyn's*, Proposition 64 took effect to deprive the plaintiff of standing while the case was pending on appeal. (*Mervyn's, supra*, 39 Cal.4th at p. 227.)  Further, where a plaintiff is deprived of standing by a change in law during the pendency of an appeal, he or she may seek leave to amend to substitute a new plaintiff with standing, in accordance with "the established rules governing leave to amend (Code Civ. Proc., § 473) and the relation back of amended complaints." (*Branick v. Downey Savings & Loan Assn.* (2006) 39 Cal.4th 235, 239 [plaintiffs deprived of standing by Prop. 64 during pendency of appeal could seek leave to amend to substitute new plaintiff].)  Just as a plaintiff may seek leave to

amend for the first time on appeal to cure a legal defect (*Sierra Palms Homeowners Assn. v. Metro Gold Line Foothill Extension Construction Authority, supra*, 19 Cal.App.5th at p. 1132), a plaintiff may take advantage of a change in law during an appeal to bolster its standing on remand.  Section 526a therefore applies prospectively to the determination whether Fistes has standing to assert its claims against GDL and the Lopezes.

3.     *Fistes has alleged facts sufficient to establish standing under section 526a*

GDL and the Lopezes contend Fistes has not alleged facts sufficient to establish taxpayer standing because the third amended complaint alleges only that Fistes pays taxes in the state, not in the District.  Fistes responds in its letter brief that the allegation Fistes paid state taxes that were used to fund the District's payments to GDL under the contract is sufficient to establish standing under section 526a, as amended.  Fistes is correct.

Section 526a, subdivision (a), provides a corporation that has been assessed and is liable to pay or has paid within one year before the commencement of an action "a tax that funds the defendant local agency" has standing to sue to restrain an illegal expenditure of public funds by the local agency.  The third amended complaint alleges Fistes "paid taxes to the State of California that were used directly and/or indirectly to make the payments that are the subject of this action."[11]  This allegation

---

[11]     The third amended complaint alleges further the project "was funded by the State of California via the Leroy F. Greene School Facilities Act of 1998 . . . and/or funds from state school bonds," and the District "paid GDL $2,416,470.62 from the

20

alone alleges payment of "a tax that funds the defendant local agency," conferring standing on Fistes under section 526a.[12] Counsel for GDL and the Lopezes asserted at oral argument that under section 526a, the taxes paid by the plaintiff must fund the project. This contention lacks merit because the plain language of the amendment requires only that the tax fund the agency, not the challenged agency action.

Moreover, the allegation by Fistes that it paid state taxes (assuming the taxes were assessed or paid within one year of the filing of the complaint) is alone sufficient to confer standing under section 526a. Under California's public school system funding scheme, "school districts receive their funding primarily from the state." (*Kirchmann v. Lake Elsinore Unified School Dist.* (2000) 83 Cal.App.4th 1098, 1111; accord, *California Redevelopment Assn. v. Matosantos* (2011) 53 Cal.4th 231, 243 [the state is "the principal financial backstop for local school

California State School Facility Program" for its work on the project. The Leroy F. Greene School Facilities Act of 1998 (Ed. Code, § 17070.10 et seq.) "governs the allocation of state funds for school facilities construction." (*California Charter Schools Assn. v. Los Angeles Unified School Dist.* (2015) 60 Cal.4th 1221, 1230; see *Sanchez v. State of California* (2009) 179 Cal.App.4th 467, 473 ["California established the State School Facilities Fund . . . to pay for school construction projects. ([Ed. Code,] §§ 17070.40, subd. (a)(1), 17070.63, subd. (a).)"].) The state funds set aside under Education Code section 17070.40, subdivision (a)(1), for school construction are sometimes referred to as the state "School Facility Program." (See *Sanchez*, at p. 473.)

[12] Although Fistes did not allege it was assessed and liable to pay or paid state taxes within one year of its filing of the action, GDL and the Lopezes did not raise the timing of Fistes's payment of taxes as an issue in their demurrer or on appeal.

21

districts"].)  The state's funding of school districts includes appropriations from the state's general fund.  (*City of Cerritos v. State of California* (2015) 239 Cal.App.4th 1020, 1039 [The California Constitution "establishe[s] a constitutional minimum funding level for education and require[s] the state to designate a portion of the General Fund for public schools."]; *Kirchmann*, at p. 1111 [school districts are "'dependent on [general fund] appropriations by the Legislature for a major part of their revenue'"].)

Therefore, by alleging payment of state taxes, Fistes has adequately alleged payment of "a tax that funds" the District. (§ 526a, subd. (a).)  By its plain terms, section 526a does not require a corporation to make tax payments directly to the local agency.  The legislative history accompanying the 2018 amendment supports this conclusion.  As the analysis of the legislation by the Assembly Committee on Judiciary stated, "AB 2376 clarifies specifically what kinds of taxes are sufficient to establish taxpayer standing.  As a preliminary matter, the tax must have been one that funds the defendant government (i.e. not necessarily paid directly ***to*** the defendant government) . . . ." (Assem. Com. on Judiciary, com. on Assem. Bill No. 2376 (2017-2018 Reg. Sess.) Apr. 10, 2018, p. 4.)  Nor does section 526a impose a residency requirement on corporations, despite imposing one on individuals.  (§ 526a, subd. (a) [authorizing action "either by a resident therein, or by a corporation"]; see *Irwin v. City of Manhattan Beach* (1966) 65 Cal.2d 13, 19 [Former section 526a violated constitutional equal protection principles by "giv[ing] a nonresident *corporate* taxpayer the right to maintain a suit . . . but [denying] the same right to a nonresident taxpayer who is a *natural person*."].)

22

The reliance by GDL and the Lopezes on *Cornelius v. Los Angeles County etc. Authority* (1996) 49 Cal.App.4th 1761 is misplaced.  The plaintiff in *Cornelius*, who was neither a resident nor taxpayer of Los Angeles County, filed a lawsuit against the Los Angeles County Metropolitan Transportation Authority to enjoin its implementation of an affirmative action program.  The Court of Appeal rejected the plaintiff's argument he had standing to sue as a state taxpayer under former section 526a because "[s]tate income taxes constitute only a *partial and indirect* source of funding for the MTA," accounting for only 15 percent of the MTA's funding.  (*Cornelius*, at p. 1778.)  Since *Cornelius*, however, the Legislature has clarified that payment of a tax that funds an agency, even partially and indirectly, confers standing on a plaintiff.  (§ 526a, subd. (a).)

Fistes has therefore alleged facts sufficient to establish standing to sue to restrain the alleged illegal expenditure of public funds by the District.[13]

C.      *The Trial Court Erred in Sustaining the Demurrer to the Third Amended Complaint Without Leave To Amend Based on Uncertainty*

Fistes contends the third amended complaint was not uncertain because it adequately apprised GDL and the Lopezes of the legal and factual bases for Fistes's claims, and to the extent

---

[13]      Because we conclude Fistes has taxpayer standing under the amendment to section 526a, we do not reach its arguments it has alleged standing as a disappointed bidder, public interest standing, or common law taxpayer standing.  Nor do we address whether Fistes had taxpayer standing under former section 526a.

23

the third amended complaint was deficient, the trial court should have granted leave to amend.  We agree on both points.

"'[D]emurrers for uncertainty are disfavored, and are granted only if the pleading is so incomprehensible that a defendant cannot reasonably respond.'" (*Mahan v. Charles W. Chan Ins. Agency, Inc.* (2017) 14 Cal.App.5th 841, 848, fn. 3; accord, *Lickiss v. Financial Industry Regulatory Authority* (2012) 208 Cal.App.4th 1125, 1135.)  "'A demurrer for uncertainty is strictly construed, even where a complaint is in some respects uncertain, because ambiguities can be clarified under modern discovery procedures.'" (*Chen v. Berenjian* (2019) 33 Cal.App.5th 811, 822, quoting *Khoury v. Maly's of California, Inc.* (1993) 14 Cal.App.4th 612, 616.)

"[U]nder our liberal pleading rules, where the complaint contains substantive factual allegations sufficiently apprising defendant of the issues it is being asked to meet, a demurrer for uncertainty should be overruled or plaintiff given leave to amend." (*Williams v. Beechnut Nutrition Corp.* (1986) 185 Cal.App.3d 135, 139, fn. 2; accord, *McBride v. Boughton* (2004) 123 Cal.App.4th 379, 387 ["[W]e ignore '[e]rroneous or confusing labels . . . if the complaint pleads facts which would entitle the plaintiff to relief.'"]; *Saunders v. Cariss* (1990) 224 Cal.App.3d 905, 908 ["[T]he trial court is obligated to look past the form of a pleading to its substance."].)

Although the third amended complaint is not a model of clarity, it contains substantive factual allegations sufficient to apprise GDL and the Lopezes of the claims against GDL: whether the award of the project contract to GDL was unlawful, and whether GDL must return the payments it received from the District for work performed under the contract.  Further, the

24

third amended complaint alleges the District violated Public Contract Code sections 20111.5 and 20111.6 by failing to require prequalification of bidders, and that the District had a conflict of interest with GDL in violation of Government Code section 1090.

To the extent the third amended complaint violated California Rules of Court, rule 2.112, by failing to explain the nature of the alleged cause of action, the trial court should have granted leave to amend to correct this deficiency.[14] (*Williams v. Beechnut Nutrition Corp., supra*, 185 Cal.App.3d at p. 139, fn. 2 ["Although inconvenient, annoying and inconsiderate, the lack of labels for plaintiff's causes of action does not substantially impair [defendants'] ability to understand the complaint, and a demurrer sustained on the ground of uncertainty without leave to amend should have been overruled."].)

D.   *Fistes Failed To Allege Facts Sufficient To Establish Liability Against the Lopezes*

Fistes contends it has adequately alleged two theories of liability against the Lopezes:  liability as the alter egos of GDL for any profits the Lopezes made from the allegedly illegal contract, and a cause of action for restitution.  Neither theory is adequately pleaded, but the trial court should have allowed Fistes leave to amend.

---

[14]   California Rules of Court, rule 2.112, requires that each "separately stated cause of action" must be numbered, describe "its nature (e.g., 'for fraud')," and state the party asserting the claim and against whom the cause of action is asserted. However, rule 2.112 does not require the plaintiff to separate its claims into separate causes of action.

"To recover on an alter ego theory, a plaintiff need not use the words 'alter ego,' but must allege sufficient facts to show a unity of interest and ownership, and an unjust result if the corporation is treated as the sole actor."  (*Leek v. Cooper* (2011) 194 Cal.App.4th 399, 415 [complaint alleging individual defendant was owner of all stock of defendant corporation and personally made all its business decisions was not sufficient for alter ego liability]; cf. *Rutherford Holdings, LLC v. Plaza Del Rey* (2014) 223 Cal.App.4th 221, 235 [plaintiff sufficiently alleged unity of interest by alleging corporate entity was inadequately capitalized, failed to "abide by the formalities of corporate existence," and was dominated, controlled, and used by defendant as a "mere shell and conduit"].)

As to the unity of interest between GDL and the Lopezes, Fistes alleges only that the Lopezes "were the ones actually controlling GDL as its only officers, directors and shareholders and they benefitted most from [the District]'s illegal payments to GDL."  But "[a]n allegation that a person owns all of the corporate stock and makes all of the management decisions is insufficient to cause the court to disregard the corporate entity." (*Leek v. Cooper, supra*, 194 Cal.App.4th at p. 415.)

Likewise, Fistes has not sufficiently alleged an unjust result if GDL is treated as separate from the Lopezes.  Fistes alleges "GDL was used by [the Lopezes] to perpetrate fraud (i.e. obtain payment from [the District] on an illegal contract), circumvent a statute (i.e. not comply with the Public Contract Code statutes applicable to school district bidder pre-qualification and contract awards) and/or accomplish some other wrongful or inequitable purpose (i.e. obtain payment from [the District] on an illegal contract)."  Each of these allegations relates to the alleged

26

illegal award of the contract by the District to GDL. Fistes makes no factual allegations of wrongdoing by the Lopezes, nor that "'adherence to the fiction of the separate existence of the corporation would promote injustice . . . or bring about inequitable results . . . .'" (*Toho-Towa Co., Ltd. v. Morgan Creek Productions, Inc.* (2013) 217 Cal.App.4th 1096, 1109-1110, fn. 5 [use of corporation to structure finances to avoid meeting payment obligations sufficient to support trial court's finding of inequitable result].)

Although Fistes has not adequately alleged the Lopezes are liable as the alter egos of GDL, Fistes has requested in both the trial court and on appeal leave to amend to bolster its allegations against the Lopezes. GDL and the Lopezes do not on appeal address whether Fistes should be allowed leave to amend. We cannot say there is no "'reasonable possibility that the defect can be cured by amendment.'" (*Loeffler v. Target Corp., supra*, 58 Cal.4th at p. 1100.) On remand, the court should grant Fistes an opportunity to amend its alter ego allegations against the Lopezes.

Fistes also argues its claims against the Lopezes for restitution are cognizable, relying on *Hartford Casualty Ins. Co. v. J.R. Marketing, L.L.C.* (2015) 61 Cal.4th 988. *Hartford* is inapposite. There, the Supreme Court held a commercial general liability insurer could seek reimbursement directly from counsel retained to represent the insured under a court order expressly preserving the insurer's postlitigation right to recover "'unreasonable and unnecessary'" fees billed by the insured's counsel. (*Id.* at pp. 996-997.) As the Supreme Court stated, "Restitution is not mandated merely because one person has realized a gain at another's expense. Rather, the obligation

27

arises when the enrichment obtained lacks any adequate legal basis and thus 'cannot conscientiously be retained.'" (*Id.* at p. 998.)

Fistes alleges GDL paid the Lopezes "increased salar[ies], bonuses, distributions, shareholder advances and other forms of compensation" from the funds GDL received from the District. But Fistes does not allege facts showing the payments from GDL to the Lopezes lacked an adequate legal basis. Fistes therefore has not alleged a cause of action for restitution against the Lopezes on behalf of the District. Indeed, the sole basis alleged for restitution is the invalidity of the contract awarded to GDL, not any action by the Lopezes. Thus, Fistes's purported cause of action for restitution against the Lopezes is merely a restatement of its claims based on alter ego liability.

E.    *The Trial Court's Dismissal of Fistes's Writ of Mandate Action Is Not Part of This Appeal*

Fistes contends the trial court[15] erred when it dismissed as moot the cause of action for a writ of mandate in Fistes's first amended petition and complaint. However, the dismissal for mootness is not properly before us. Fistes appealed from the trial court's June 1, 2017 judgment, which was entered in favor of GDL and the Lopezes. Fistes later voluntarily dismissed the District without prejudice. Therefore, Fistes has not appealed from a judgment in favor of the District.[16] Although Fistes named GDL as a real party in interest in its first amended

---

[15]    Judge Chalfant.

[16]    In its Civil Case Information Statement, Fistes lists only GDL and the Lopezes as parties to this appeal.

28

petition, Fistes sought a peremptory writ of mandate directing only the District to take action, including rescinding its allegedly illegal payments to GDL and delivering documents to Fistes. Because the District is not a party to this appeal, Fistes's challenge to the trial court's dismissal of the petition on the basis of mootness is not before us.[17]

---

[17] The parties have not addressed whether the District is a necessary or indispensable party to Fistes's third amended complaint or whether the case may proceed in the District's absence. (See *Tracy Press, Inc. v. Superior Court* (2008) 164 Cal.App.4th 1290, 1298 [""Failure to join an 'indispensable' party is not 'a jurisdictional defect' in the fundamental sense; even in the absence of an 'indispensable' party, the court still has the power to render a decision as to the parties before it which will stand.""].) Although section 526a confers standing on a plaintiff to sue a local agency, officer, agent, or other person acting on the agency's behalf, the courts have relied on section 526a to confer standing to sue both the agency and private parties. (See, e.g., *Holloway v. Showcase Realty Agents, Inc., supra*, 22 Cal.App.5th at pp. 770-771 [standing to sue water district and private parties]; *California Taxpayers Action Network v. Taber Construction, Inc., supra*, 12 Cal.App.5th at p. 145, fn. 25 [standing to sue school district and construction contractor].) Similarly, in *Miller v. McKinnon, supra*, 20 Cal.2d at pages 86 and 96, the Supreme Court concluded the taxpayer had standing to sue county officers and a private party, and to assert the first cause of action against only the private partnership. We do not reach whether on remand Fistes should be granted leave to amend to name the District as a defendant in the amended complaint.

29

## DISPOSITION

The judgment is reversed and the matter remanded for further proceedings.  On remand, the trial court should grant Fistes leave to amend its complaint consistent with this opinion. Fistes is to recover its costs on appeal.


FEUER, J.

WE CONCUR:


ZELON, Acting P. J.


SEGAL, J.

Filed 8/13/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| A.J. FISTES CORPORATION,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>GDL BEST CONTRACTORS,<br>INC., et al.,<br><br>    Defendants and<br>Respondents. | B283662<br><br>(Los Angeles County<br>Super. Ct. No. BS161779)<br><br>ORDER CERTIFYING<br>OPINION FOR<br>PUBLICATION AND<br>MODIFYING OPINION<br><br>NO CHANGE IN<br>JUDGMENT |

THE COURT:*

    The opinion in the above-entitled matter filed on October 23, 2018, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports and it is so ordered.

It is further ordered the opinion be modified as follows:

On page 2, delete the second paragraph that begins "While Fistes's appeal was pending . . . " and replace it with the following paragraph:

While Fistes's appeal was pending, the Legislature amended Code of Civil Procedure section 526a,[18] effective January 1, 2019, to specify what types of tax payments are sufficient to establish taxpayer standing. Section 526a now provides a corporation that has been assessed and is liable to pay or has paid within one year before the commencement of an action "a tax that funds the defendant local agency" has standing to sue a local agency to challenge the agency's expenditure of public funds. The amendment to section 526a applies prospectively to this case because the change in law does not alter the legal consequences of defendants' past conduct, but instead only expands the scope of who may sue under the statute. Further, a plaintiff may take advantage of a change in law during an appeal to support a finding of standing on remand. The contention by GDL and the Lopezes that a corporation only has standing if it pays taxes that fund the challenged project lacks merit. Under the amended statute, the taxes paid by a plaintiff corporation need only fund the local agency to confer

_____

[18] All further undesignated statutory references are to the Code of Civil Procedure.

2

standing.  Fistes has therefore alleged facts sufficient to establish standing under section 526a based on its payment of state taxes that fund the District.[19]

There is no change in the judgment.

---

[19]  GDL and the Lopezes contend Fistes's standing argument should be rejected because Fistes opposed the demurrer based only on its standing as a disappointed bidder, not a taxpayer.  We decline to find forfeiture because it was GDL and the Lopezes who raised Fistes's standing as a state taxpayer in their demurrer, and the trial court addressed in its ruling whether Fistes had taxpayer standing under former section 526a.  (*People v. McCullough* (2013) 56 Cal.4th 589, 593 ["""The purpose of [the forfeiture] rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected."""]; *Boyle v. CertainTeed Corp.* (2006) 137 Cal.App.4th 645, 649 ["The critical point for preservation of claims on appeal is that the asserted error must have been brought to the attention of the trial court."].)

_____

*     ZELON, Acting P. J.     SEGAL, J.          FEUER, J.